# IN THE COURT OF APPEALS OF IOWA

No. 19-1377
Filed September 22, 2021

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**CHARLES DAVID BROWN,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.


　　　　Charles David Brown appeals his convictions for intimidation with a dangerous weapon, willful injury causing serious injury, possession of a firearm as a felon, and interference with official acts while armed with a firearm, all as a habitual offender. **AFFIRMED.**


　　　　Martha J. Lucey, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.


　　　　Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

Charles David Brown appeals his convictions for intimidation with a dangerous weapon, willful injury causing serious injury, possession of a firearm as a felon, and interference with official acts while armed with a firearm, all as a habitual offender. Brown asserts the trial court abused its discretion in denying Brown's motion to reopen the record.[1]

In the afternoon of July 7, 2018, Brown was a front-seat passenger in a beige SUV with three others. The SUV pulled up outside the home of Willie Outlaw, and Brown yelled out the window at Outlaw's grandson "T Train" asking if T Train shot "at my homey." Words were exchanged and Outlaw told those in the car to leave. They responded, "We gonna get T Train. We will be back. We come to talk to T Train."

At about 10:00 p.m., three men came through the alley behind Outlaw's yard. One of the men was carrying an AR-15 rifle. Another of the men yelled, "Shoot 'em! Shoot 'em all! Shoot the whole family!" The man with the rifle opened

---

[1] Brown also argues Iowa Code section 814.7 (Supp. 2019) violates the Iowa and federal constitutions and his trial counsel was ineffective for failing to object to the testimony of a trial witness—or, in the alternative, the court committed plain error by allowing that testimony. Iowa Code section 814.7 was amended, effective July 1, 2019, to prohibit defendants from raising ineffective-assistance-of-counsel claims on direct appeal. *State v. Tucker*, 959 N.W.2d 140, 145 (Iowa 2021). Ineffective-assistance claims must "be decided in the first instance in postconviction-relief proceedings rather than on direct appeal." *Id.* Our supreme court has already considered and denied the constitutional challenges to section 814.7 raised by Brown here. *See State v. Treptow*, 960 N.W.2d 98, 103–08 (Iowa 2021). And our supreme court has "repeatedly rejected plain error review and will not adopt it now." *Id.* at 109. Because this court is "not at liberty to overrule controlling supreme court precedent," *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014), we do not further address Brown's ineffective-assistance and plain-error claims.

fire on the people outside, and Outlaw was shot in the leg. The men then left through the alley and drove away.

Officer Andrew Tindall was on patrol a few blocks away when he heard gun shots. He was familiar with Brown and his cohorts, had seen the SUV pulled up outside the Outlaw residence earlier in the day, and had heard words exchanged. He knew those at the house and those in the SUV were not on friendly terms, and he was concerned there may be "retaliation." Officer Tindall drove toward the sounds of gunfire and observed a tan SUV driving "blacked out," that is, without its headlights. He followed the SUV and, when its lights came on few blocks away, he was able to identify it as the SUV he had seen earlier in the day in front of the Outlaw residence. He continued to follow the SUV and activated the patrol car's light bar. The SUV momentarily turned into a parking lot, then pulled away. Officer Tindall pursued, now activating his siren. The SUV stopped, and four people emerged and ran in different directions. Officer Tindall recognized the front seat passenger who exited carrying a silver and black rifle as Brown. A foot chase ensued. Brown threw the rifle, and Officer Tindall stopped his pursuit to secure the weapon. Brown got away that evening. The driver was apprehended.

Officers at the scene of the SUV found an "A's" baseball jersey belonging to Brown inside the vehicle. On the ground outside the front passenger-side door was a Western Union receipt from 6:37 p.m. that night listing Brown as the sender.

Brown was later arrested and charged. Prior to trial, Brown gave notice of his intent to present an alibi defense.

At trial, Outlaw identified Brown as one of the men in the SUV who had come to residence earlier on July 7 looking for T Train and the man who came

back later carrying a rifle and shooting him. He also testified about the identities of two others in the SUV.

Brown offered two witnesses who testified Brown was at their apartment from about 8:00 p.m. on the night of the shooting until the following morning. Brown testified in his own defense and stated he had been in the SUV in the afternoon but was dropped off at his friend's apartment later and was there all night. He testified he did not know why or how phone calls made from and received by his cell phone shortly after the time of the shooting had been erased.

In rebuttal, the State called Outlaw's daughter Barbara to testify. Barbara stated she was at her parents' house at the time of the shooting. She testified someone said "there's some dudes coming" and she looked up and "saw three dudes. One was tall. One—the other two was about the same height." She also stated, "I didn't see the size of the gun. I just seen when they pulled it out. When they pulled it out, I ran in the house . . . ." She said she only "got a look at one" and identified Brown as that person.

After the close of evidence but before closing arguments, the defense filed a motion to reopen the record to question Barbara again. Defense counsel argued Barbara's testimony differed from her statements made to a responding officer and recorded on his bodycam video on the night of the shooting that she did not know who the three men were. The defense wished to "be able to recall her or call the officer to make clear for the jury that what she testified to is not what she said on July 7, 2018." The trial court denied the motion.

The jury found Brown guilty of intimidation with a dangerous weapon, willful injury causing serious injury, possession of a firearm as a felon, and interference with official acts while armed with a firearm.[2] Brown now appeals.

"A district court has broad discretion to reopen the record . . . ." *State v. Long*, 814 N.W.2d 572, 575 (Iowa 2012); *see also State v. Mason*, 203 N.W.2d 292, 295 (Iowa 1972) ("We have allowed wide leeway in reviewing discretion of trial court in permitting a case to be reopened."). But to reopen the record, the court must find "it appears 'necessary to the due administration of justice.'" *Long*, 814 N.W.2d at 576 (citation omitted). Because the district court is in the best position to determine what is "necessary and appropriate to achieve substantial justice," we reverse only if its reasoning is untenable or unreasonable. *Id.* (citation omitted).

Our supreme court has identified a number of factors the district court should consider before exercising its discretion and reopening the record:

> (1) the reason for the failure to introduce the evidence; (2) the surprise or unfair prejudice inuring to the opponent that might be caused by introducing the evidence; (3) the diligence used by the proponent to secure the evidence in a timely fashion; (4) the admissibility and materiality of the evidence; (5) the stage of the trial when the motion is made; (6) the time and effort expended upon the trial; and (7) the inconvenience reopening the case would cause to the proceeding.

*State v. Teeters*, 487 N.W.2d 346, 348 (Iowa 1992).

Here, the court asked the defense when it had received the recording of the officer's bodycam containing Barbara's prior statement. Defense counsel noted

---

[2] In a post-verdict colloquy with the court, Brown admitted to prior convictions.

she was a more recent appointment but prior counsel "would have gotten it quite some time ago." In denying the motion to reopen the record, the trial court stated:

> We are in the position that after rebuttal evidence, both sides rested their cases; and I have already heard and ruled on the renewed motions for judgment of acquittal. The record was closed at that point.
>
> Concerning extrinsic evidence of prior inconsistent statements, there are certain conditions that have to be satisfied for those matters to be gone into. I'm denying the motion to reopen the record under [Iowa] Rule [of Evidence] 5.611(a) and under rule 5.613(b). I am not at this point going to be reopening the record for purposes of going into such extrinsic evidence concerning alleged prior inconsistent statements by a witness.

We are able to discern the trial court considered the appropriate factors.

Because the court's reasoning was neither untenable nor unreasonable, we affirm.

**AFFIRMED.**